Thank you, Your Honor. Thomas Hester for Appellant Jason Dunlap. May it please the Court, I intend to focus my time on the Sentencing Guidelines issue. If you don't agree with me on that, then the mandatory minimum issue is harmless error. So with that, I'd like to highlight that the purpose, structure, and language of the Sentencing Guidelines are what the manual says at page 12 of the current volume. The There have only been two published appellate decisions addressing how high that goes. I'll briefly comment on the Caseta, the 1993 case from the Second Circuit. There, the Second Circuit said that the guidelines weren't helpful in resolving the issue of whether it went above 43 somehow, and they constructed or put forth a hypothetical sort of disparity between different offenders. I would simply note that the Sentencing Guidelines say that the Caseta's resolution sort of promoted a disparity, which is, under the Court's analysis, if there were co-defendants, both at offense level 46, say, which the Caseta Court says you can go that high and beyond, who go to trial, one goes to trial and one resolves the case by plea, they would have the same guideline sentence. Nearly 20 years later, the Supreme Court in Zuri v. Frye stressed that pleas are resolving 97 percent of our Federal cases and that they serve important interests in both preserving prosecutorial resources and also in giving defendants a benefit for accepting responsibility. I will go ahead and turn now to the really the more significant and the other appellate case, because this is what both the probation office and the district court judge relied on in terms of its reasoning, and that's United States v. Hauser, a 95 case from the Eleventh Circuit. There, the Hauser court said the guidelines were instructive in resolving the issue, and they focused in particular on Guideline 1B.1.1. So let's talk about why that provision was so important. Well, let me go through that provision, first of all. In 1.1.1, it says identify, you know, the offense conduct, and then in 2, base offense level, specific offense characteristics, in sub 3, any adjustments, in sub 4, any grouping, and then sub 5 says apply the adjustments as appropriate in the defendant's acceptance of responsibility. 6 talks about other adjustments, including Chapter 4 adjustments, that can affect the offense level, and I'll return to that in a few minutes. 7, I think, is critical, and it says determine the guideline range in Part A of Chapter 5 that corresponds to the offense level and criminal history category determined above. So I believe that 1B.1.1.7 is telling us that the offense level has been calculated before you ever get to the table in Chapter 5, which comports with what the beginning of the that there's a grid from 1 to 43 levels. Let me ask you this, counsel. I'm going to jump ahead a little bit to the case that the government cited, this Reinhart case. And, you know, there hasn't been any extensive briefing on Reinhart and whether or how it would apply to the offense in this case, but let's assume for a moment that we would want to send this case back to the district court to analyze whether or not that underlying State offense triggers the enhancement under the statute in question here, I think it's 2251. What would be the harm to your client if, at this stage, I think their client is going to be in custody for a long time, no matter what we do in this case, if we were to send the case back to the district court to analyze whether or not that trigger should have been effected under 2251? Well, I think that would be appropriate. I think it's critically important that in doing so, this Court resolve the sentencing guidelines issue and whether the offense level after acceptance, so the total offense level here, is 40 or 43, as the district court held. And I take it your position is that because the guideline range, regardless of what the stat max is, the guideline range is still going to be potentially at 43, which is why we would need to resolve that. Well, that's not my position, but — No, no. I'm saying that — but that's a possibility, which is why you want us to resolve it now. Yeah. And that's why I alluded to it essentially being harmless error, if you don't concur with me on that. Well, but what if we were to send it back and the district — and I'm not recommending this is what the district court judge does, but having been in your guys' position once upon a time, there often were times where cases were remanded, and on the remand, the district court judge would sentence to lower. And when I was a prosecutor, I didn't like that, because I said there's no reason to do that, but they would do it anyway. If that were to happen in this case, if the district court were on resentencing to sentence your client to a lower level, because there would have to be a full resentencing, you would agree? Yes. Then why would we need to reach the — I'll call it the 43 issue. Why would we need to reach that in this case? So if Reinhart does indeed kind of take the statutory minimum off the table, the 25-year level is not a floor that the court is bound by. However, the court imposed 30 years here, and the court said it would do that. So I think it's absolutely important. And if you look at the guidelines, and you look at the table, right, and if we look at 43, which is where the table ends, it is only — if someone — if that's — if I'm correct, and you apply full three levels for acceptance, which is what Mr. Dunlap got here, then it is only in criminal That comports very well with the language of the guidelines. And the last point that I want to make that is, I think, very important, and I began by talking about 1B1.17, you know, the sentencing table in Part 1A says the Commission has established a sentencing table that for technical and practical reasons contains 43 levels. Now, yes, at sentencing, the court should identify all the specific offense characteristics and adjustments that apply to a case. But when that arithmetic process exceeds 43, the result ends at 43, the top of the guidelines, which the guidelines tell us at page 12 of the current volume. Congress could have made guidelines that went up to 46 or 146, but they did not. I just talked about sort of the meaning or the import of what I said, and that it only taking the top of the guidelines below life at 40 for criminal history categories 1 and 2. But let's return to Application Note 2 of Chapter 5, because that's the only place in this book where there's any reference to the guidelines possibly going above 43. And so I think it is really important. Now, it's been discussed at length in the briefing, and I don't want to reiterate all of that, but I do want to highlight that the Commission and Congress established in Application Note 2 a difference in the second and third sentence. First, it identifies the problem, that it could in sort of theoretical cases be below 1 or above 43, but they've already told us it's 1 to 43. For below 1, they begin with total offense level. Below 1 results in an offense level of 1. However, they chose different language for the third sentence, saying an offense level of above 43 results in an offense level of 43. Now, that's a term of art. Total offense level refers to the offense level after acceptance is applied, offense level before. As a rule of statutory construction, when a court or, I'm sorry, a legislative body uses different language, there's a reason for that. And the Ornelas case at the party's site talks about that. When you couple that with the language of the Guidelines in general, the background section of 3E1.1 that talks about why the Guidelines for good reason and satisfy legitimate social interests, a defendant who clearly demonstrates acceptance of responsibility for his offense is appropriately given a lower sentence than a defendant who does not. If you look at 4B1.5, so now we're jumping to Chapter 4, past 3E and acceptance, and there's a pattern enhancement that was applied in this case, if you go back to the PSR. But Chapter 4, and it's 4B1.5B1, specifically says, even there, you reduce for acceptance. The Guidelines are consistent in, and their purpose includes both maintaining consistency and in incentivizing pleas, which we see the Court ratifying the Supreme Court in Frye and Lafler more than 25 years after the first of our, the first of the circuit cases that look at this. So, again, 1B1.7 says, determine the Guideline range in Part A of Chapter 5 that corresponds to the offense level and criminal history category determined above in those mechanical steps. So there is nothing about the process of going to the book, there's nothing magical that happens when you get to Part A of Chapter 5, and you see that note that makes the sole reference in the Guidelines about above 43 and uses discrete language to say, and it's not total offense level in that circumstance. So, to conclude, we're more than 25 years down the Sentencing Guidelines road. There's only two published appellate decisions addressing this issue. But today, this isn't an outlier case. It's not uncommon in the Sentencing Guidelines for child pornography, for complex fraud cases, for big drug cases, to have a mechanical sort of aggregate if you simply add all of the potential things, like the pattern enhancement, that could take you above 43. But there's no ambiguity in the Guidelines. If there were, the rule of lenity would apply, as I discussed in my opening brief, and still compel the result I urge. So where, as in Mr. Dunlop's case, the acceptance of responsibility would yield a total offense level of 40, starting at 43, which is the top of the Guidelines, it does that. And it's only in those smallest criminal history categories that it's going to take it below life. And, of course, that's an advisory guideline under 3553A, the Court may do as it sees fit. Thank you very much, counsel, for your argument today. Thank you. Those who are arguing today, you'll notice when the light turns red, it starts flashing red. That's not like at the stop sign where you say, or the jaywalk, where you say, you know what, it's flashing red, but I can still hustle, I can still make it. When it starts flashing red, that means time is actually over. So that's a new function we have. But thank you very much for your argument. That's a new function. When it starts flashing red, again, it's not like the crosswalk. That means actually you do not cross. May it please the Court, Kelly Zusman, appearing on behalf of the United States. It sounds like the Court's primary concern here is one of procedure. What do we do now? I think Mr. Hester and I both agree that there is a Reinhardt issue in this case relative to Oregon's child pornography possession statute. And I wanted to thank you for raising that to the Court's attention. I know sometimes these things pop up last minute when you're focusing on a case, something kind of just pops in your head. And I appreciate you doing that. Thank you, Your Honor. So because I think we both agree that this is an issue that we would like to litigate, we would like to flesh out, we need to compare Oregon's child pornography possession statute to that in California, then a remand to Judge Simon I think is the most appropriate mechanism for doing that. So this Court then has something to review.  Counsel? Yes, Your Honor. If the Reinhardt argument is resolved in favor of the defendant here, how would that affect his guideline calculation? And the answer is I don't think it would resolve it. So I agree that in all likelihood we will have the same guideline calculation issue. What I don't know that we're going to have if this case were remanded is I don't know if Mr. Dunlap is still going to be at a place where he's going to want to appeal, regardless of how the guideline computation turns out. Because if there is a complete resentencing, I can't predict what Judge Simon will do, but I can say Mr. Dunlap may be satisfied with the ruling that he gets from Judge Simon. So I do — I agree that this issue about the mandatory minimum is unaffected by the guideline computation question. So — and I can anticipate that Judge Simon is going to run the numbers the same way again that he did now. I think the question then for this Court is do you want to provide the district judge with some guidance on that particular issue when he takes up the Reinhardt mandatory minimum issue, or do you simply want to remand it for a new sentencing and kind of see where things play out after that? And I take it under 2251, assuming that the defendant prevails on the Reinhardt issue, and I'm offering no opinion as to that, but just so I can understand the math here, the stat max then would be 25 years. Or is it 30? I'm sorry, 30 years. Thirty. So conceivably — thank you — 30 years, so conceivably he could get the same sentence even with the reduced stat max. It's possible. It is. Okay. But at that point, Judge Simon would have the authority, I guess, to go below the — It would be a 15-year floor. — a 15-year floor. So he could go as low as 15 if he wanted to. Correct. So then the 43 base offense level or total offense level would become moot, essentially. I don't know that I would say it was moot. I mean, we still have — this Court has held that the judge has to properly calculate the guideline. True, true. I mean, aside from the 3553A, you know, initial calculation, that you certainly have to have a correct calculation. But if he did feel that a departure or any variance, you know, closer to the 15-year range, then I don't think we would be here, or we'd be coming back. And that's precisely why I think probably the best route here is simply a remand, allow Judge Simon to take up the Reinhart issue, and then resentence Mr. Dunlap anew. And again, although I anticipate that Judge Simon will likely end up back at a 43 level again, I don't know, once he leaves the guidelines and takes up the statutory question, he'll reach a decision that will then compel Mr. Dunlap to want to continue to litigate this 43 v. 40 issue. If the Court would like to hear our reasons why we think Judge Simon correctly calculated the guidelines, I'm happy to address that. I agree with Mr. Hester. We have only two cases that were published directly on point, but we also have unpublished decisions from the Fifth Circuit and the Seventh Circuit. Everyone agrees. And going back to 1989, the language of Chapter 5 has remained the same. And every court to have interpreted so far has ruled consistently with Judge Simon here, which is to say that you work the guidelines in the order that they appear in the book. And the cap of 43 appears in Chapter 5, well after the Court has made allowances for all of the guideline adjustments and acceptance of responsibility. That seems to make the most sense. It's consistent with the overall intent and purposes of the guidelines, and it allows for a greater affording, if you will, of credit for proportionality. As a practical matter, though, don't the courts always calculate all of the deductions and the enhancements, and the very last thing they do is do the acceptance of responsibility before reaching the total offense level? So why would it be different in this case? Actually, I think this case is precisely like it's done in every case, which is true. I mean, we looked at the base offense level. There were a number of enhancements that applied to Mr. Dunlap's case, which is why he reached a level 53. He was then given three levels for acceptance of responsibility. And that's all the Chapter 1 through Chapter 4 applications. And then it's not until we get to Chapter 5, when we look at departures and the sentencing table, that then the district court says, okay, I've got a level 50 here after giving acceptance. The commentary to Chapter 5 says I reduced that to a 43. Look at the sentencing table. We're at life. But now I'm going to move over here to 3553A. And that's where Judge Simon did, I think, precisely what this Court and the Supreme Court wanted him to do. He then analyzed the sentence under 3553A, taking into account Mr. Dunlap's acceptance of responsibility and his cooperation. So I think Judge Simon, this was a textbook application of the guidelines that Judge Simon undertook here. And it's also, it is precisely what he was supposed to do under his statutory mandate as well. Unless there were further questions from the Court, the government is willing to submit. Judge Wardlaw, anything further? No. Thank you. Thank you very much, counsel. And again, thank you both for your argument and the 28J letters. We appreciate it. This matter is submitted. We'll call the next case. Pierce v. Newth.
judges: Wardlaw, Owens, Marquez